LUDOVIC PIGNATELLI, Appellant, *v.* THE SUN PRINTING AND PUBLISHING ASSOCIATION, Respondent.

Second Department, June 9, 1922.

Libel — ludicrous article concerning plaintiff published in defendant's newspaper held libelous on demurrer to complaint alleging, without innuendo, falsity and malice — malice inferable from falsity.

A demurrer to a complaint alleging a false and malicious publication in the defendant's newspaper of a ludicrous description of incidents of the life of the plaintiff, a private individual, will be overruled where it appears, upon an examination of the article published, entitled "Prince Pignatelli Jumps Job. Tires of Moving Furniture in Hotel of Father-in-Law Waters," that it holds the plaintiff up to public ridicule and contempt, although there is no innuendo so that the article can be assigned no meaning except that which appears on its face, for such an article is libelous and actionable if false, and the falsity is admitted by the demurrer.

*It seems*, that malice is inferable from falsity in a statement subjecting a private individual to ridicule, scorn and contempt.

APPEAL by the plaintiff, Ludovic Pignatelli, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Nassau on the 2d day of March, 1922, denying plaintiff's motion for judgment on the pleadings, consisting of a complaint and a demurrer thereto, sustaining defendant's demurrer and dismissing the complaint.

*John Patterson* [*Herbert C. Brinckerhoff* with him on the brief], for the appellant.

*Archibald R. Watson* [*John M. Harrington* with him on the brief], for the respondent.

BLACKMAR, P. J.:

On the 29th of January, 1921, there appeared in the *Evening Sun*, published by defendant, an article concerning plaintiff in the following words:

" PRINCE PIGNATELLI JUMPS JOB.

" Tires of Moving Furniture in Hotel of Father-in-Law Waters.

" (Special Despatch to The Sun).

"ATLANTIC CITY, Jan. 29.— Prince Ludovic Pignatelli D'Aragon, scion of a royal house, is in revolt against work. It became known today that the descendant of a great house of Spain has defied his democratic father-in-law, G. Jason Waters, managing director of the Ambassador chain of hotels.

" The Prince leaped lightly from the lowest rung of the ladder by which the father of his wife sought to have him mount to knowledge of the modern hotel business and generally gave labor the razz. At present the Prince is ' indisposed ' at the Merrick, L. I., home of his father-in-law and developments will be awaited with interest by society, and followers of society, in this and many other cities.

" So far a deep pall of silence enwraps the members of the Waters family who are here, and so far as is known the Prince is not making any statements for publication. It is known, however, that the recently widely heralded visit to this city made by Prince Pignatelli and his wife, who was Miss Ruth Waters, was not so much in the nature of a pleasant seashore outing as a personal answer to a message from the father-in-law, summoning the Prince to the Hotel Ambassador here to receive an ultimatum. Also it is known that for the time the father-in-law prevailed, and that the Prince went to New York where he entered into service in the New Ambassador Hotel, ' assisting ' in the department devoted to the laying of carpets and the placing of furniture.

*"Prince Jumps His Job.*

" But the Prince has quit. House records turned in to Mr. Waters, as manager of the hotel chain, showed that his royal son-in-law had jumped the job, and further inquiry by wire revealed the fact that he had retired to the Waters Long Island home and had announced to Managing Director Waters, as employer and relative-at-law, that he would not return to it."

Then follow statements of the prominence, skill and success of the father-in-law; and under the heading " of international import " is the statement that " International social importance is given to the developments in the effort of Mr. Waters to make a hotel man out of Prince Pignatelli by the connections of the Waters family with both American and foreign aristocracy." Then follows a record of these aristocratic connections and a comparison of the plaintiff with his brother-in-law, " who has given no indication of belief that real work might lower him in the eyes of society." The article then continues:

"At the Hotel Ambassador, Fifty-first Street and Park Avenue, which is one of the lines of hotels managed by G. Jason Waters, father-in-law of Prince Pignatelli, it was said today that the Prince had worked there for a week, helping to distribute the furniture which was being moved into the hotel from a warehouse.

" The Prince operated a small hand-truck, on which pieces of furniture were carried. His week of labor ended last Saturday, when he informed some of his co-workers that he was going to Atlantic City for the week-end. The Prince did not return to his job on Monday, although the task of distributing the furniture in the hotel was by no means finished. Whether his failure to return predicates a decision on his part to quit work altogether, nobody at the hotel was able to say."

There is no innuendo and the article can be assigned no meaning except that which appears to the casual reader upon its face. (*Morrison* v. *Smith,* 177 N. Y. 366.)

The complaint alleges that the article is false, untrue and published maliciously, and this is admitted by the demurrer. We must assume, therefore, that every statement in the article, except that plaintiff is of so-called noble birth, being the Prince of Aragon, is false. It is not a question whether the truth, dressed out in language calculated to excite mirth and entertain newspaper readers, is libelous; but whether this article, by means of false statements of facts, holds the plaintiff up to public ridicule and contempt. If it does, plaintiff's reputation is injured and it is libelous. Right-thinking men certainly condemn and hold in contempt one who, claiming connection with royalty, marries the daughter of a successful American business man, and, summoned to work by his father-in-law, begins at the foot of the ladder to labor with his hands, continues to work one week, defies his " democratic " father-in-law and, in the language of the article, " jumps his job " and gives labor the " razz." If these allegations of fact are true, the publication of them does not injure his reputation; if they are false, he is libeled. The spirit of the article, slangy,

written to amuse by a ludicrous description of incidents in the life of a private individual, which are of no concern to the public, does not alone make it libelous. It is the false statement of facts that injures the reputation of the plaintiff by making him ridiculous. It is not pleasant to be laughed at; and although unwarranted violations of the privacy of life of individuals who are not asking for public suffrage or seeking notoriety, are not, I regret to say, actionable, yet malicious falsity in a statement of facts subjecting a private individual to ridicule, scorn or contempt is actionable, and malice is inferable from falsity. (*Triggs* v. *Sun Printing & Pub. Assn.*, 179 N. Y. 144.)

In my opinion the article is libelous and the order should be reversed on the law, with ten dollars costs and disbursements, the motion of defendant for judgment on the pleadings denied, and the motion of plaintiff for judgment granted, with ten dollars costs, with leave to defendant to withdraw the demurrer and answer over upon payment of costs within twenty days after the entry of the order hereon.

KELLY, MANNING, KELBY and YOUNG, JJ., concur.

Order reversed on the law, with ten dollars costs and disbursements; motion of defendant for judgment on the pleadings denied, and motion of plaintiff for judgment granted, with ten dollars costs, with leave to defendant to withdraw the demurrer and answer over upon payment of costs within twenty days after entry of the order hereon.